## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>LARRY PHILLIPS, an individual; LUIS VALADEZ-LAMBERT, an individual; and MATTHEW GUTIERREZ, an individual,<br><br>*Defendants.* | **MEMORANDUM DECISION AND ORDER DENYING [29] PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>Case No. 2:22-cv-00281-DBB<br><br>District Judge David Barlow<br>Magistrate Judge Daphne A. Oberg |

Before the court is Plaintiff Acuity, A Mutual Insurance Company's ("Acuity") Motion for Summary Judgment.[1] Acuity seeks a declaratory judgment that it has no duty to defend or indemnify Larry Phillips in a state court civil action (the "underlying action").[2] In the underlying action, Mr. Phillips is alleged to have secretly recorded Luis Valadez-Lambert and Matthew Gutierrez, his tenants, and to have gone through their personal belongings without their knowledge before he improperly evicted them.[3] For the reasons that follow, the court DENIES Acuity's motion.

## BACKGROUND

Mr. Phillips owned a residence located at 1906 East Saint Mary's Drive in Salt Lake City ("the house") at all relevant times.[4] He purchased a homeowners insurance policy through Acuity for the house, to which he added a Home Biz Endorsement and Coverage Enhancement

---

[1] Mot. Summ. J., ECF No. 29, filed Nov. 29, 2022.
[2] *Id.* at 1. The underlying action is *Valadez-Lambert, Luis et al. vs. Phillips, Larry Sumner, et al.*, No. 210900212 (3d Dist. Ct. Utah, filed 2021).
[3] State Ct. Am. Compl. ¶ 14, *Valadez-Lambert, Luis et al. vs. Phillips, Larry Sumner, et al.*, No. 210900212 (3d Dist. Ct. Utah, Mar. 11, 2022), ECF No. 34-1.
[4] Phillip's State Ct. Answer ¶ 10, ECF No. 29-2; Phillips Dep. 9:10–11:3, ECF No. 34-2.

Plus ("Insurance Policy").[5] He also had umbrella coverage.[6] The Insurance Policy covered the period October 4, 2019 through October 4, 2020.[7]

The Homeowner's Policy has personal liability coverage.[8] "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies," Acuity will "[p]ay up to our limit of liability for the damages for which the insured is legally liable[,] and [p]rovide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent."[9] It also provides for exclusions to personal liability coverage.[10] The policy excludes from coverage bodily injury or property damage "[w]hich is expected or intended by an insured even if the resulting bodily injury or property damage: [i]s of a different kind, quality or degree than initially expected or intended[,] or [i]s sustained by a different person, entity or property than initially expected or intended."[11] It also excludes bodily injury or property damage "[a]rising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured."[12]

There is a Home Biz endorsement which modifies and amends some of the coverage.[13] It replaces the personal liability coverage language with: "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence or personal and advertising injury caused by an offense to which this coverage

---

[5] Strahan Decl. ¶ 3, ECF No. 29-5 at 1–2.
[6] *Id.* at 1.
[7] *Id.*
[8] Insurance Policy, ECF No. 29-5 at 29.
[9] *Id.* "Occurrence" means "an accident, including exposure to conditions, which results, during the policy period, in bodily injury or property damages." *Id.* at 19. "Bodily injury" is defined as "bodily harm, sickness or disease, including required care, loss of services and death that results." *Id.* "'Property damage' means physical injury to, destruction of or loss of use of tangible property." *Id.*
[10] *Id.* at 29.
[11] *Id.*
[12] *Id.*
[13] *See id.* at 81–90.

applies . . . ."[14] It adds that "'Personal and advertising injury' means injury, including consequential bodily injury, arising out of one or more of the following offenses: . . . [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor . . . ."[15] The following exclusion is "added to Exclusion 2:" "Personal and advertising injury: [c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury," "[a]rising out of a breach of contract," or "[a]rising out of a criminal act committed by or at the direction of the insured."[16]

There also is a Coverage Enhancement Plus[17] which adds the following provision to the personal injury coverage: "If a claim is made or suit is brought against an insured for damages resulting from an offense, defined under personal injury, to which this coverage applies, [Acuity] will: [p]ay for the damages for which an insured is legally liable . . .  and [p]rovide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent."[18] "'Personal injury' means injury arising out of one or more of the following offenses . . . [including t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of

---

[14] *Id.* at 86. It also adds to the definition of occurrence: "All bodily injury or property damage resulting from any one accident or from continuous or repeated exposure to substantially the same generally harmful conditions shall be considered to be the result of one occurrence." *Id.* at 81.

[15] *Id.* at 82.

[16] *Id.* at 88–89. The "breach of contract" exclusion is not included in the Coverage Enhancement Plus exclusion section, which "replace[s]" the Homeowner's Policy's Exclusions section (while the Home Biz Endorsement "adds" to a part of the Exclusions section). As a matter of contract interpretation, it appears the Home Biz Endorsement adds language to the Homeowner's Policy exclusions section part 2, which the Coverage Enhancement Plus then replaces in its entirety. However, because the court's decision does not rest on the complaint's breach of contract claims triggering or relieving Acuity's duty to defend, the court need not definitively decide this aspect of the contract's interpretation.

[17] *Id.* at 61–66.

[18] *Id.* at 64.

3

its owner, landlord or lessor . . . ."[19] The enhancement "replaces" the Homeowner's Policy's "Exclusions" section, providing that the insurance does not apply to personal injury "[c]aused by or at the direction of an insured with the knowledge that the act would violate the rights of another and would inflict personal injury" or "[a]rising out of a criminal act committed by or at the direction of an insured."[20]

Mr. Phillips' Umbrella Policy also has Personal Injury coverage.[21] It states that Acuity "will pay sums in excess of the primary limit that an insured is legally obligated to pay as damages because of personal injury or property damage caused by an occurrence to which this insurance applies."[22] It does not modify Acuity's duty to defend, only its duty to indemnify.

Mr. Phillips resided at the St. Mary's Drive house and rented out private rooms to individuals, including Mr. Valadez-Lambert and Mr. Gutierrez.[23] He placed concealed, motion-activated cameras throughout the house, including in the living room, dining room, kitchen, bedroom, bathroom, hallway, office area, entry, and studio.[24] The cameras were small black

---

[19] *Id.* at 63. The parties both argue about the types of damages that Mr. Valadez-Lambert and Mr. Gutierrez assert in the underlying action. However, because the Coverage Enhancement Plus's exclusions provision—which "*replace[s]*" the Homeowners Policy's exclusions provision—is not defined in terms of types of damages, the types of damages in the underlying action are not relevant.

[20] *Id.* at 64. Mr. Phillips' Insurance Policy also has an "Identity Fraud Expense and Cyber Protection" endorsement. *Id.* at 92. Mr. Valadez-Lambert and Mr. Gutierrez argue that this endorsement provides Mr. Phillips with coverage for their civil wiretap claims. Valadez-Lambert Opp'n 19, ECF No. 34. But that endorsement states, Acuity "shall have no duty to defend any privacy and security claims." Insurance Policy 102. Further, there are several references to, but no argument regarding, an exclusion for bodily injury and property damage arising out of the rental of the premises contained in the Homeowner's Policy. *Id.* at 29 ("Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to bodily injury or property damage: Arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured."). The lack of argument is likely because the entire section (exclusions) is "replaced" by the Coverage Enhancement Plus, and the Coverage Enhancement Plus does not contain the "or the rental or holding for rental of any part of any premises by an insured" language in its exclusion for business-connected conduct. *Id.* at 64.

[21] Insurance Policy 137.

[22] *Id.*

[23] Phillips Dep. 48:10–48:16; *id.* at 33:11–33:19; *id.* at 49:14–49:16.

[24] *Id.* at 45:12–47:20.

cubes plugged directly into the wall, mimicking phone charger blocks.[25] Mr. Phillip's tenants were unaware of the presence of these disguised cameras.[26]

While Mr. Phillips claims he originally put the cameras throughout the house for "security,"[27] his "original intent for protection over a period of time turned into" a desire to view the recordings of individuals' bodies due to "curiosity" and "suspense."[28] He saved some of the concealed cameras' videos in folders on his electronic devices.[29] He organized the videos into folders by the individual's name, labeling the videos with the individual's first initial and a brief description of the activity the individual was performing.[30] The saved, labeled, and organized activities typically involved the recorded individual being in a state of undress.[31]

On either July 31, 2020 or August 4, 2020, Mr. Valadez-Lambert and Mr. Gutierrez discovered the concealed cameras.[32] Mr. Valadez-Lambert texted Mr. Phillips, saying "Larry were you in my place today? Someone broken in my place. I'm coming to you about this before I report this to the police. You need to report this to the police."[33] Mr. Valadez-Lambert and Mr. Gutierrez then called the police, and a police officer arrived at the house.[34] However, Mr. Phillips remained unaware of the real reason for the police presence;[35] the officer, Mr. Valadez-Lambert, and Mr. Gutierrez told Mr. Phillips that the officer was investigating stolen packages.[36]

---

[25] *Id.* at 45:24–46:18; 77:7–77:17.
[26] *Id.* at 53:20–53:23.
[27] *Id.* at 48:4–48:7.
[28] *Id.* at 51:6–53:12; *id.* at 156:8–156:25.
[29] *Id.* at 84:10–85:20.
[30] *Id.* at 85:14–87:23.
[31] *Id.* at 88:1–88:14.
[32] Valadez-Lambert Dep. 150:15–152:8, ECF No. 34-4; Aug. 4 Text Messages, ECF No. 34-6 at 2; Aff. of Probable Cause 2, ECF No. 34-3 at 3 (sealed).
[33] Aug. 4 Text Messages at 2.
[34] Valadez-Lambert Dep. 151:4–151:6; Aff. of Probable Cause 2.
[35] Phillips Dep. 54:1–54:21.
[36] Gutierrez Dep. 81:22–81:25, ECF No. 33-2.

That same night, Mr. Phillips gave Mr. Valadez-Lambert and Mr. Gutierrez notice that they needed to move out.[37] Mr. Phillips maintains that he had asked Mr. Valadez-Lambert to move out "even before, through verbal discussions," sometime after July 23, 2020.[38] Mr. Phillips "wanted [Mr. Valadez-Lambert] gone"[39] because of "a combination of things that w[ere]n't working."[40] One of the reasons was that there were "suspicious reports of theft from the premises."[41] In an August 4, 2020 text message, he told Mr. Valadez-Lambert that "[y]ou need to have your personal belongings out by Saturday, August 8th, 2020."[42] Around the same time, Mr. Phillips also informed Mr. Gutierrez that he had four days to vacate after Mr. Gutierrez inquired about signing a lease.[43] Shortly after, Mr. Gutierrez and Mr. Valadez-Lambert moved out.[44]

On September 10, 2020, police served a search warrant on Mr. Phillips' house.[45] On January 4, 2021, Salt Lake City Police Department officers arrested and booked Mr. Phillips.[46] He was charged with four counts of burglary and nine counts of voyeurism.[47] On January 13, 2021, Mr. Valadez-Lambert and Mr. Gutierrez initiated a civil action against Mr. Phillips in state court.[48] On November 5, 2021, Mr. Phillips pleaded guilty to one count of burglary and nine counts of voyeurism.[49]

---

[37] Def.'s Resp. to Pl.'s Luis Valadez-Lambert's First Set of Disc. Reqs. to Def. 3, ECF No. 34-5 at 4.
[38] Phillips Dep. 157:12–157:17; Def.'s Resp. to Pl.'s Luis Valadez-Lambert's First Set of Disc. Reqs. to Def. 3.
[39] Phillips Dep. 156:6–156:7.
[40] *Id.* at 156:21–156:25.
[41] Def.'s Resp. to Pl.'s Luis Valadez-Lambert's First Set of Disc. Reqs. to Def. 3.
[42] Phillips Dep. 155:25–156:1; Aug. 4 Text Messages at 3.
[43] Gutierrez Dep. 56:19–57:4.
[44] *Id.* at 80:9–80:20; Valadez-Lambert Dep. 160:1–161:20.
[45] Aff. of Probable Cause 2.
[46] *Id.* at 3.
[47] Docket in *State of Utah v. Larry S. Phillips*, ECF No. 29-4 at 2–3.
[48] State Ct. Am. Compl., ECF No. 34-1.
[49] Statement of Def. in Support of Plea(s), ECF No. 34-8 at 3–5.

In March 2022, Mr. Valadez-Lambert and Mr. Gutierrez filed an amended complaint ("Amended Complaint") in the underlying action against Mr. Phillips.[50] They alleged twelve causes of action against Mr. Phillips: intrusion upon seclusion, intentional infliction of emotional distress, forcible entry or eviction, retaliatory eviction, breach of the implied covenant of quiet enjoyment, private nuisance, public nuisance, breach of the implied covenant of good faith and fair dealing, trespass, a violation of the Interception of Communications Act, a violation of the Federal Omnibus Crime Control and Safe Streets Act of 1968, and a violation of the Uniform Voidable Transactions Act.[51] On April 25, 2022, Acuity filed this action, seeking a declaratory judgment "that Acuity has no duty under the Policy to indemnify Mr. Phillips in connection with the claims asserted by" Mr. Valadez-Lambert and Mr. Gutierrez "pursuant to Rule 57, Federal Rules of Civil Procedure, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201."[52] On November 29, 2022, Acuity filed a motion for summary judgment, arguing that there is no duty to defend or indemnify the claims Mr. Valadez-Lambert and Mr. Gutierrez asserted against Mr. Phillips because the claims arise out of intentional and criminal acts or do not assert an occurrence under the policy.[53] Mr. Phillips filed a response in opposition,[54] as did Mr. Valadez-Lambert.[55] Mr. Gutierrez filed a notice of joinder in the arguments made in Mr. Valadez-Lambert's opposition.[56] On February 6, 2023, Acuity filed a reply.[57]

---

[50] State Ct. Am. Compl.
[51] *Id.*
[52] Compl. 17–18, ECF No. 2.
[53] Mot. Summ. J. 16, ECF No. 29.
[54] Phillips Opp'n, ECF No. 33.
[55] Valadez-Lambert Opp'n, ECF No. 34.
[56] ECF No. 35.
[57] Reply, ECF No. 42.

## DISCUSSION

### I. The Court Exercises Its Discretionary Power to Declare the Rights and Other Legal Relations of Acuity.

"Under the Declaratory Judgment Act, a district court '*may* declare the rights and other legal relations of [an] interested party seeking [declaratory relief].'"[58] The Tenth Circuit has "identified five factors district courts should consider in determining whether to exercise their discretion to hear and decide claims for declaratory judgment:"[59]

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.[60]

Applying those factors here, first, a declaratory judgment would resolve the controversy concerning Acuity's duty to defend and/or indemnify Mr. Phillips in the underlying action.[61] It would serve a useful purpose in doing so, since Acuity has refused to defend Mr. Phillips in the underlying action on its position that it is not so obligated. It is in the interest of all parties to have the court's decision.

---

[58] *State Farm Fire & Cas. Co. v. Telecomm Consultants, Inc.*, 757 F. App'x 726, 729 (10th Cir. 2018) (quoting 28 U.S.C. § 2201(a)).
[59] *Id.*
[60] *Id.* (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).
[61] *See also* 16 COUCH ON INSURANCE § 227:29 (3d Ed. 2019) ("[W]hether an insurer has a duty to defend a suit against its insured is generally considered a controversy ripe for declaratory relief, even when the issue of the insurer's actual liability in the underlying suit may not be considered until after a resolution of that suit.").

Next, the declaratory judgment is for a proper purpose; neither party asks the court to resolve issues that would result in claim or issue preclusion in the underlying action. The declaratory judgment would not increase friction between the federal and state court systems or improperly encroach on state jurisdiction because the request in this action will not produce any orders that the state court must follow or determinations that the state court must acknowledge. Finally, there is the issue of alternative remedies. There is an alternative: Acuity could wait until the underlying action is resolved and see whether Mr. Phillips sues it for the costs of his defense and indemnification. However, that alternative has downsides, as the parties might make different decisions if they knew presently whether Acuity has a duty to defend. In conclusion, the five factors considered together do not weigh against this court exercising its discretion to declare the rights of these parties.

## II.  Acuity Has Not Carried Its Burden to Prove that It Does Not Have a Duty to Defend Mr. Phillips in the Underlying Action.

"Summary judgment is appropriate if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[62] "When applying this standard, courts 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'"[63] The inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[64]

---

[62] *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1121 (10th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)).
[63] *In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1271 (10th Cir. 2019) (quoting *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000)).
[64] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

Under Utah law,[65] "[a]n insurance policy is merely a contract between the insured and the insurer."[66] Utah courts "construe insurance contracts by considering their meaning 'to a person of ordinary intelligence and understanding, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, including the purpose of the policy.'"[67] "Additionally, [courts] 'consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none.'"[68]

"[I]f the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language."[69] "If, on the other hand, [the court] determine[s] there is an ambiguity in the insurance policy, [it] resolve[s] 'any ambiguity or uncertainty in the language of an insurance policy . . . in favor of coverage.'"[70] "An ambiguity exists when a provision 'is capable of more than one *reasonable* interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies.'"[71]

### A. Acuity Has Not Carried Its Burden to Show that the Amended Complaint Does Not Allege a Risk Within the Coverage of the Insurance Policy.

Acuity contends that the Insurance Policy "contain[s] exclusions that exclude intentional actions from coverage," and this exclusion means it does not have a duty to defend Mr. Phillips in the underlying action.[72] Specifically, the Homeowner's Policy, as modified by the Coverage

---

[65] Neither party disputes that Utah law applies.
[66] *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 14, 140 P.3d 1210, 1213 (quoting *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993)).
[67] *Compton v. Houston Cas. Co.*, 2017 UT 17, ¶ 17, 393 P.3d 305, 310 (quoting *Doctors' Co. v. Drezga*, 2009 UT 60, ¶ 12, 218 P.3d 598).
[68] *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 2011 UT 49, ¶ 13, 266 P.3d 733, 737 (quoting *Glenn v. Reese*, 2009 UT 80, ¶ 10, 225 P.3d 185, 189).
[69] *Compton*, 2017 UT 17 at ¶ 17 (quoting *Ohio Cas. Ins. Co. v. Unigard Ins. Co.*, 2012 UT 1, ¶ 16, 268 P.3d 180) (alteration in original).
[70] *Id.* at ¶ 18 (quoting *Doctors' Co.*, 2009 UT 60 at ¶ 12).
[71] *Id.*
[72] Mot. Summ. J. 16.

Enhancement Plus, excludes personal injury claims "[c]aused by or at the direction of an insured with the knowledge that the act would violate the rights of another and would inflict personal injury . . . or [a]rising out of a criminal act committed by or at the direction of the insured."[73] Acuity points to Mr. Phillips' convictions for burglary and voyeurism in connection with the actions alleged in Mr. Valadez-Lambert and Mr. Gutierrez's Amended Complaint.[74] It argues that the factual basis for his guilty pleas is "conclusively established as a matter of law, and Mr. Phillips is precluded from relitigating [those facts] here."[75]

Acuity also points to the Amended Complaint's use of "intentionally" in its causes of action for intrusion upon seclusion, intentional infliction of emotional distress, breach of the implied covenant of quiet enjoyment, private nuisance, public nuisance, breach of the implied covenant of good faith and fair dealing, trespass, violation of the Utah Interception of Communications Act, and violation of the Federal Omnibus Crime Control and Safe Streets Act of 1968.[76] It asserts that two of the remaining three claims "arise out of, and are based on, the cameras placed in the Tenants' rooms and private areas, the discovery of those cameras, and Mr. Phillips' direct instruction to the Tenants to move out of the home after the Tenants found out about the cameras and contacted police."[77] The remaining claim—violation of the Uniform Voidable Transactions Act—does not state an occurrence in Acuity's eyes. In sum, Acuity argues, "Mr. Phillips' actions were all intentional actions, and the consequences of these actions were natural and probable" so "there is no 'occurrence' as defined by the terms of the policy."[78]

---

[73] *Id.* at 17.
[74] *Id.*
[75] Reply 5.
[76] Mot. Summ. J. 17.
[77] *Id.*
[78] *Id.* at 18.

11

Mr. Phillips argues that, because the majority of Mr. Valadez-Lambert and Mr. Gutierrez's claims are pled in the alternative and allow for Mr. Phillips' mental state to have been "reckless" or "negligent" rather than intentional, Acuity has a duty to defend under the insurance policies.[79] Mr. Valadez-Lambert and Mr. Gutierrez take a similar position, but only with respect to the "landlord tenant claim" and the civil wiretap claims.[80]

Turning to Utah law, "[w]hen [courts] engage in a duty-to-defend analysis, [they] focus on two documents: the insurance policy and the complaint."[81] "An insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations of the complaint."[82] "The test is whether the complaint alleges a risk within the coverage of the policy,"[83] so "it would be error for the trial court to consider extrinsic evidence, as it is wholly irrelevant to the issue of whether the insurer has a duty to defend its insured"—unless an exception applies.[84]

"Where factual questions render coverage uncertain . . . the insurer must defend until those uncertainties can be resolved against coverage."[85] "Inferences and assumptions about an insured's intent to injure are improper and inconsistent both with the well-accepted practice of alternative pleading and with [courts'] oft-repeated instruction that 'insurance policies should be construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat

---

[79] Phillips Opp'n 14–19.

[80] Valadez-Lambert Opp'n 12–20. The "landlord tenant claim" is the Amended Complaint's third cause of action for "Forcible Entry or Eviction": "Defendant evicted Plaintiffs without their permission or without going through the proper legal procedures. Defendant also failed to give proper written notice to Plaintiffs to evict them." State Ct. Am. Compl. ¶ 34.

[81] *Benjamin*, 2006 UT 37 at ¶ 16.

[82] *Id.* (quoting *Fire Ins. Exch. v. Estate of Therkelsen*, 2001 UT 48, ¶ 21, 27 P.3d 555)

[83] *Benjamin*, 2006 UT 37 at ¶ 16 (quoting *Therkelsen*, 2001 UT 48 at ¶ 21 n.3).

[84] *Therkelsen*, 2001 UT 48, ¶ 23 (providing for an exception to this rule when the duty to defend turns on the parties' contractual terms; court would be able to consider extrinsic evidence to determine which claims were "covered" by the policy when the contract only provided a duty to defend "against any *covered* claim or suit" (emphasis added)); *see also Equine Assisted Growth*, 2011 UT 49 at ¶ 18 (providing exception for when "coverage is premised on information not contained in the complaint").

[85] *Equine Assisted Growth*, 2011 UT 49 at ¶ 8 (quoting *Benjamin*, 2006 UT 37 at ¶ 22).

the purposes of insurance.'"[86] Only "[w]here the allegations, if proved, show 'there is no

potential liability [under the policy], there is no duty to defend.'"[87]

Applying the "eight corners"[88] test, the court starts with the Insurance Policy and then

turns to the Amended Complaint's allegations. Mr. Phillips' Insurance Policy, as modified by the

Coverage Enhancement Plus, provides that "[i]f a claim is made or a suit is brought against an

insured for damages because of bodily injury or property damage caused by an occurrence"[89] or

"for damages resulting from an offense, defined under personal injury, to which this coverage

applies,"[90] Acuity will "[p]ay up to our limit of liability for the damages for which the insured is

legally liable[,] and [p]rovide a defense at our expense by counsel of our choice, even if the suit

is groundless, false or fraudulent."[91] "Personal injury" means "injury arising out of one or more

of the following offenses: . . . [t]he wrongful eviction from, wrongful entry into, or invasion of

the right of private occupancy of a room, dwelling or premises that a person occupies, by or on

behalf of its owner, landlord or lessor . . . ."[92] The policy excludes "[p]ersonal injury: [c]aused

by or at the direction of the insured with the knowledge that the act would violate the rights of

another and would inflict personal injury" or "[a]rising out of a criminal act committed by or at

the direction of the insured."[93]

---

[86] *Benjamin*, 2006 UT 37 at ¶ 24 (quoting *United States Fidelity & Guar. Co. v. Sandt*, 854 P.2d 519, 521 (Utah 1993)).

[87] *Basic Rsch., LLC v. Admiral Ins. Co.*, 2013 UT 6, ¶ 7, 297 P.3d 578, 580 (quoting *Deseret Fed. Sav. & Loan Ass'n v. U.S. Fid. & Guar. Co.*, 714 P.2d 1143, 1147 (Utah 1986)); *see Benjamin*, 2006 UT 37 at ¶ 23 ("[T]he complaint in *Rosas* did not allege a separate, alternative claim for relief sounding in negligence. Rather, it was uncontested in that case that the 'complaint clearly sound[ed] . . . in an intentional tort.'" (discussing *Rosas v. Eyre*, 2003 UT App 414, 82 P.3d 185)).

[88] *Equine Assisted Growth*, 2011 UT 49 at ¶ 18.

[89] Insurance Policy 29.

[90] *Id.* at 64.

[91] *Id.* at 29, 64.

[92] *Id.* at 63.

[93] *Id.* at 64.

Turning to the underlying action's Amended Complaint, it describes, in its general allegations, how Mr. Phillips rented rooms to Mr. Valadez-Lambert and Mr. Gutierrez to use as their personal residences, how he entered their rooms to go through their personal belongings, how he surreptitiously recorded them by placing disguised cameras throughout the house, and how he did so without their knowledge or permission, using the recorded footage for his own sexual gratification.[94] It also alleges Mr. Valadez-Lambert and Mr. Gutierrez discovered the cameras and contacted the police, and when Mr. Phillips "learned about this he told them that they must get out of the property and he evicted them."[95] Mr. Phillips "evicted [Mr. Valadez-Lambert and Mr. Gutierrez] without their permission or without going through the proper legal procedures."[96] In the majority of the causes of actions, the Amended Complaint pleads in the alternative that Mr. Phillips acted "recklessly" or "negligently."[97]

Comparing the Insurance Policy and the Amended Complaint, it appears that the coverage pertaining to "personal injury" applies to nearly all the offenses. The allegations are all based on the purported fact that Mr. Phillips entered Mr. Valadez-Lambert and Mr. Gutierrez's private spaces, went through their personal belongings, recorded videos of them in those spaces, and then evicted them from those spaces. In the words of the policy, the causes of action "aris[e] out of . . . [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room . . . that a person occupies, by . . . [the] landlord."[98] All of their causes of action, with the exception of the violation of the Uniform Voidable Transactions Act,

---

[94] State Ct. Am. Compl. ¶¶ 6–14.
[95] *Id.* at ¶¶ 15–16.
[96] *Id.* at ¶ 34.
[97] *Id.* at ¶ 37 (forcible entry or eviction); *id.* at ¶ 42 (retaliatory eviction); *id.* at ¶ 48 (breach of the implied covenant of quiet enjoyment); *id.* at ¶ 54 (private nuisance); *id.* at ¶ 60 (public nuisance); *id.* at ¶ 69 (trespass); *id.* at ¶¶ 72, 75 (violation of Utah Interception of Communications Act); *id.* at ¶¶ 79, 82 (violation of the Federal Omnibus Crime Control and Safe Streets Act of 1968).
[98] Insurance Policy 63.

14

"originat[e] from, grow[] out of, [and] flow[] from" this alleged conduct, and there is a causal relationship between these allegations and Mr. Valadez-Lambert and Mr. Gutierrez's injuries.[99]

Then there is the issue of whether any of these claims are excluded from coverage, as they would be if they are "[c]aused by or at the direction of an insured with the knowledge that the act would violate the rights of another and would inflict personal injury" or if they "[a]ris[e] out of a criminal act committed by or at the direction of an insured."[100] Under Utah law, "provisions that limit or exclude coverage should be strictly construed against the insurer."[101] "Where a loss occurs which normally would be compensable under an insurance policy, and the company asserts a defense of noncoverage on the ground of an exception stated in the policy, the general rule of insurance law is that this is in the nature of an affirmative defense; and that the company has the burden of proving by a preponderance of the evidence that the loss comes within the exception stated in the policy."[102]

In *Benjamin v. Amica Mutual Insurance Company*, the Utah Supreme Court considered whether an insurer had a duty to defend an insured for a negligent infliction of emotional distress claim stemming from alleged "horrific, intentional acts" of sexual assault when the policy excluded "expected or intended" injuries.[103] There, the insured was sued by two plaintiffs for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, false imprisonment, and invasion of privacy.[104] His homeowners insurance policy

---

[99] *Gibbs M. Smith, Inc. v. U.S. Fid. & Guar. Co.*, 949 P.2d 337, 343 (Utah 1997) (quoting *National Farmers Union Property & Casualty Co. v. Western Casualty & Surety Co.*, 577 P.2d 961, 963 (Utah 1978)).
[100] Insurance Policy 64.
[101] *Sandt*, 854 P.2d at 523.
[102] *Whitlock v. Old Am. Ins. Co.*, 21 Utah 2d 131, 134, 442 P.2d 26, 27 (1968); *LDS Hosp., a Div. of Intermountain Health Care, Inc. v. Capitol Life Ins. Co.*, 765 P.2d 857, 859 (Utah 1988) (quoting *Browning v. Equitable Life Assur. Soc. of U.S.*, 94 Utah 570, 80 P.2d 348, 351 (1938)); *Am. Nat. Prop. & Cas. Co. v. Sorensen*, 2013 UT App 295, ¶ 13, 362 P.3d 909, 913.
[103] *Benjamin*, 2006 UT 37.
[104] *Id.* at ¶ 2.

provided that "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury . . . caused by an occurrence to which coverage applies, [Amica] will . . . [p]rovide a defense at [Amica's] expense by counsel of [Amica's] choice, even if the suit is groundless, false or fraudulent."[105] The policy "specifically exclude[d] from coverage 'bodily injury . . . [w]hich is expected or intended by the insured.'"[106] The Court observed that the "crux of a claim for negligent infliction of emotional distress is unintentional injury."[107] By including the claim in their complaint, the plaintiffs were alleging an "alternative theory of liability" in which the insured "unintentionally injured them."[108] "Because [the plaintiffs] alleged that [the insured] negligently and unintentionally inflicted emotional distress upon them, Amica had a duty to defend [the insured] until it could establish that those claims were not supported by the facts."[109]

Similarly, Mr. Valadez-Lambert and Mr. Gutierrez allege alternative theories of liability in their complaint, allowing for liability even if Mr. Phillips did not act intentionally (and instead acted recklessly or negligently). Further, unlike the Homeowner's Policy's original language— excluding bodily injury or property damage "[w]hich is expected or intended by an insured"[110]— the Coverage Enhancement Plus limits excluded injuries to those "[c]aused by or at the direction of an insured with the knowledge that the act would violate the rights of another and would inflict personal injury." Because the court must "consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none,"[111] the court does not accept Acuity's argument that it should read the distinct language in the Coverage Enhancement Plus exclusion as synonymous with the "expected or intended" language of the

---

[105] *Id.* at ¶ 17 (alterations in original).
[106] *Id.*
[107] *Id.* at ¶¶ 18, 20 (citing *Harnicher v. Univ. of Utah Med. Ctr.*, 962 P.2d 67, 69 (Utah 1998)).
[108] *Id.* at ¶ 20.
[109] *Id.* at ¶ 22.
[110] Insurance Policy 29.
[111] *Equine Assisted Growth*, 2011 UT 49 at ¶ 13 (quoting *Glenn v. Reese*, 2009 UT 80 at ¶ 10).

Homeowner's Policy.[112] The Coverage Enhancement Plus exclusion requires a mental state of "knowledge that the act would violate the rights of another" and knowledge that the act would "inflict injury" on them. And "[e]ven where the complaint details egregious, intentional conduct"[113] that would certainly fall into that exclusion, Mr. Valadez-Lambert and Mr. Gutierrez's complaint also provides for Mr. Phillips' offending conduct to have been undertaken with a reckless or negligent mental state.[114] Because a factfinder could determine that the facts (as alleged) satisfy the elements for many of Mr. Valadez-Lambert and Mr. Gutierrez's claims without finding that their injuries were "[c]aused by [Mr. Phillips] with the knowledge that the act would violate [their] rights . . . and would inflict personal injury" on them, Acuity has not carried its burden to prove that this exclusion applies to every cause of action in the Amended Complaint that would otherwise be covered.

Turning to the criminal acts exclusion, while some of the alleged facts suggest that certain of Mr. Phillips' actions were criminal—for example, that he secretly recorded Mr. Valadez-Lambert and Mr. Gutierrez in private places for "his own sexual pleasure"[115]—the Amended Complaint allows for liability on multiple claims *without* these criminal acts.[116] For instance, while the Amended Complaint alleges Mr. Phillips is liable for intentional infliction of emotional distress for setting up the hidden cameras and watching the recordings, it also alleges he is liable on that claim because he "entered [Mr. Valadez-Lambert and Mr. Gutierrez]'s

---

[112] *See, e.g.*, Mot. Summ. J. 17–18; Reply 8.

[113] *Benjamin*, 2006 UT 37 at ¶ 24.

[114] State Ct. Am. Compl. ¶ 37 (forcible entry or eviction); *id.* at ¶ 42 (retaliatory eviction); *id.* at ¶ 48 (breach of the implied covenant of quiet enjoyment); *id.* at ¶ 54 (private nuisance); *id.* at ¶ 60 (public nuisance); *id.* at ¶ 69 (trespass); *id.* at ¶¶ 72, 75 (violation of Utah Interception of Communications Act); *id.* at ¶¶ 79, 82 (violation of the Federal Omnibus Crime Control and Safe Streets Act of 1968).

[115] These allegations, if true, appear to be violations of Utah Code § 76-9-402 (Privacy Violation, a class B misdemeanor), and § 76-9-702.7 (Voyeurism, a class A misdemeanor).

[116] *See* 7A COUCH ON INSURANCE § 103:40 (3d Ed. 2019) ("For such an exception to apply, the essential element of the underlying cause of action must be a criminal act, and the criminal act must be the proximate cause of the complainant's injury."); *LDS Hosp.*, 765 P.2d at 859.

bedrooms when [they] were not there and went through [their] personal belongings and property."[117] The same is true for the intrusion upon seclusion, forcible entry or eviction, breach of the implied covenant of quiet enjoyment, private nuisance, public nuisance, breach of the implied covenant of good faith and fair dealing, and trespass claims.[118] And "[w]hen those allegations," not categorically excluded by the criminal exclusions provision, "could result in liability under the policy, then the insurer has a duty to defend."[119]

Acuity argues that "'the words 'arising out of' are very broad, general and comprehensive' when considered in the context of insurance coverage," and therefore there "is no question that the eviction claims have a causal nexus with Mr. Phillips['] admittedly intentional and criminal acts."[120] Assuming without deciding that Acuity's position is correct, it still does not preclude coverage on all the Amended Complaint's claims. Even if the criminal acts exclusion applied to any claim that mentions Mr. Phillips secretly recording Mr. Valadez-Lambert and Mr. Gutierrez or that might conceivably "flow" from that crime, such as improper eviction procedures, there is still at least one claim that does not: trespass.

Under Utah law, the elements for trespass are (1) intentionally (2) entering land (3) in the possession of another (4) without lawful authority.[121] The entirety of Mr. Valadez-Lambert and Mr. Gutierrez's trespass claim is that Mr. Phillips "trespassed [their] property when he entered [their] private rooms without their permission."[122] Their general allegations contend that Mr. Phillips "had gone into their rooms while they were not there and without their permission, [and]

---

[117] State Ct. Am. Compl. ¶ 29.
[118] *Id.* at 5–14.
[119] *Nova Cas. Co. v. Able Const., Inc.*, 1999 UT 69, ¶ 8, 983 P.2d 575, 578.
[120] Reply 8–9 (quoting *Meadow Valley Contractors, Inc.*, 2001 UT App. 190, ¶ 14, 27 P.3d 594, 597).
[121] *See Purkey v. Roberts*, 2012 UT App 241, ¶ 17, 285 P.3d 1242, 1247; *Walker Drug Co. v. La Sal Oil Co.*, 972 P.2d 1238, 1243 (Utah 1998).
[122] State Ct. Am. Compl. ¶ 67.

had gone through their personal possessions and property."[123] Trespass is not always a criminal act. Further, there are no assertions in the Amended Complaint that would causally link this act—trespass—with Mr. Phillips' voyeuristic conduct. The Amended Complaint does not specify whether Mr. Phillips trespassed before or after he started secretly recording Mr. Valadez-Lambert and Mr. Gutierrez. This allows for the trespass to have occurred prior to Mr. Phillips' allegedly criminal acts—potentially precluding any causal relationship.[124] And because trespass only requires intentionally entering land in the possession of another without authority—not knowledge that the entry is wrongful,[125] Mr. Valadez-Lambert and Mr. Gutierrez could establish Mr. Phillips' liability on this claim without proving that Mr. Phillips entered their private rooms "with the knowledge that the act would violate [their] rights . . . and would inflict personal injury." Therefore, even assuming without deciding that the phrase "[a]rising out of a criminal act"[126] makes the exclusion apply to any alleged facts that follow the criminal act in time and might conceivably be connected to it, there is at least one claim on which Acuity has not carried its burden to establish that this exclusion relieves it from liability.[127]

In summary, Acuity has not carried its burden to prove that it does not have a duty to defend on—at a minimum—the claim for trespass. And "when there are covered and non-covered claims in the same lawsuit, the insurer is obligated to provide a defense to the entire suit, at least until it can limit the suit to those claims outside of the policy coverage."[128]

---

[123] *Id.* at ¶ 15.
[124] *See LDS Hosp.*, 765 P.2d at 860.
[125] *Purkey*, 2012 UT App 241 at ¶ 18.
[126] Insurance Policy 64.
[127] *See LDS Hosp.*, 765 P.2d at 859 ("[A]ny exceptions or conditions which would then deny him relief, take him out of the indemnity provisions, render them inoperative as to him, are matters of defense, and the burden thereof rests upon the insurer. '[L]imitations, exceptions or conditions which may relieve the insurer from liability, which may be set forth in the policy outside of the language of the insuring clause, or which may exist outside of the policy entirely, must be made and established by the insurer to escape liability thereunder.'" (quoting *Browning v. Equitable Life Assur. Soc. of U.S.*, 94 Utah 570, 80 P.2d 348, 351 (1938)).
[128] *Benjamin*, 2006 UT 37 at ¶ 25 (quoting *Appleman on Insurance Law and Practice* § 136.2[D] (2d ed.2006)).

### B. *Acuity Has Not Carried Its Burden to Show that an Exception to the Eight Corners Rule Applies or that Such an Exception Would Change the Outcome.*

As alluded to earlier, Utah recognizes two exceptions to the eight corners rule that allow the court to consider extrinsic evidence in addition to the complaint and insurance policy. The first exception is "when policy terms define the scope of the duty to defend in reference to something other than the allegations in the complaint."[129] This exception applies when the contractual terms require extrinsic evidence in order to determine whether the duty has been triggered.[130] Such a policy describes its duty to defend like this: "At our expense and with attorneys of our choice, we will defend an insured against any *covered* claim or suit,"[131] rather than "the insurer will 'provide a defense at [the insurer's] expense . . . even if the suit is *groundless, false or fraudulent.*'"[132]

Here, the duty to defend is described as follows: "If a claim is made or suit is brought against an insured for damages resulting from an offense, defined under personal injury, to which this coverage applies, we will: [p]rovide a defense at our expense by counsel of our choice, even if the suit is *groundless, false or fraudulent.*"[133] If the duty to defend were only for covered claims, it would render the "groundless, false or fraudulent" clause a nullity. Because the court must "consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none,"[134] it finds that Acuity's duty to defend is defined in reference to the allegations in the complaint.

---

[129] *Equine Assisted Growth*, 2011 UT 49 at ¶ 11.
[130] *Therkelsen*, 2001 UT 48 at ¶ 24 (finding that contractual term "covered claim" required extrinsic evidence in provision, "[a]t our expense and with attorneys of our choice, we will defend an insured against any *covered* claim or suit" (emphasis added)).
[131] *Id.* (quoting *Fire Insurance Exchange v. Rosenberg*, 930 P.2d 1202 (Utah Ct. App. 1997)) (emphasis added).
[132] *Id.* at ¶ 23 (quoting Douglas R. Richmond, *Reimbursing Insurers' Defense Costs: Restitution and Mixed Actions*, 35 San Diego L.Rev. 457, 459 (1998)) (emphasis added).
[133] Insurance Policy 64.
[134] *Equine Assisted Growth*, 2011 UT 49 at ¶ 13 (quoting *Glenn*, 2009 UT 80 at ¶ 10).

The second exception occurs when the duty to defend "is premised on information not contained in the complaint."[135] For example, extrinsic evidence is admissible when the complaint is captioned incorrectly so that it appears as though the action fits the exclusion for "insured versus insured" even though the parties do not dispute that the plaintiff had no authority to sue in the insured's name.[136] This exception is not applicable; Mr. Phillips, Mr. Valadez-Lambert, and Mr. Gutierrez all argue that Acuity's duty to defend is premised on information that *is* contained in the Amended Complaint.

Finally, although Utah courts have not recognized it, there is another "widely recognized exception": "an insurer should not have a duty to defend an insured when the facts alleged in the complaint ostensibly bring the case within the policy's coverage, but other facts that are not reflected in the complaint and are unrelated to the merits of the plaintiff's action plainly take the case outside the policy coverage."[137]

The Tenth Circuit applied this exception in *Pompa v. American Family Mutual Insurance Company*.[138] In *Pompa*, the insured had an altercation that resulted in the victim's death, and he subsequently pleaded guilty to criminally negligent homicide.[139] The victim's heirs filed a wrongful death action against the insured, making no mention of the conviction in their complaint.[140] The insured, a holder of homeowners insurance with American Family, requested

---

[135] *Id.* at ¶ 18.

[136] *Id.* at ¶ 17.

[137] *Pompa v. Am. Fam. Mut. Ins. Co.*, 520 F.3d 1139, 1147 (10th Cir. 2008) (quoting 1 Allan D. Windt, *Insurance Claims and Disputes* § 4.4 at 293–94 (4th ed. 2001)). In a subsequent case, the Tenth Circuit narrowed this recognized exception: "Our holding in *Pompa* is based on the expectation that the Colorado Supreme Court would recognize an exception to the complaint rule if an insured's complaint contained allegations *made in bad faith* and '*framed to trigger an insurance policy*.'" *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 960 (10th Cir. 2011) (quoting *Pompa*, 520 F.3d at 1147) (emphasis added).

[138] 520 F.3d 1139 (10th Cir. 2008).

[139] *Id.*

[140] *Id.* at 1141, 1148.

that it defend the civil action.[141] "[R]elying on the intentional-injury and criminal-conviction exclusions in [the] insurance policy," American Family "denied that it owed [the insured] a duty of defense or indemnification."[142] Noting that Colorado had yet to embrace this exception, the Tenth Circuit believed that it would because the exception "would not undercut the purposes served by the [eight corners] rule."[143] Namely, the exception "would not defeat the legitimate expectations of the insured to a defense, because an insured can have no reasonable expectation of a defense when an indisputable fact, known to all parties, removes the act in question from coverage."[144] Finally, the Tenth Circuit concluded, an exception may not be needed at all because "judicially noticeable facts are incorporated into the complaint."[145] "Because the district court could have taken judicial notice of [the insured's] conviction, that fact can be said to appear within the four corners of the complaint."[146]

Here, the court need not determine if the Utah Supreme Court would recognize this exception because even if it did, it would not relieve Acuity of its duty to defend. This is because, unlike in *Pompa*, Mr. Phillips' criminal convictions are not coextensive with all of the conduct in the Amended Complaint that creates a duty to defend. A discussion of issue preclusion provides a helpful framework because in order for the criminal convictions to preclude coverage, there must be "no potential liability [under the policy]."[147]

Federal courts must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."[148] "[I]ssue preclusion, or

---

[141] *Id.* at 1141.

[142] *Id.*

[143] *Id.* at 1147.

[144] *Id.* at 1147–48.

[145] *Id.* at 1149.

[146] *Id.*

[147] *Basic Rsch.*, 2013 UT 6 at ¶ 7 (quoting *Deseret Fed. Sav.*, 714 P.2d at 1147) (alteration in original).

[148] *Franklin v. Thompson*, 981 F.2d 1168, 1170 (10th Cir. 1992) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

collateral estoppel, . . . prevents parties or their privies from relitigating 'particular issues that have been contested and resolved.'"[149] Utah courts "apply a four-part test to determine whether the doctrine of issue preclusion is applicable:"[150]

> First, the issue challenged must be identical in the previous action and in the case at hand. Second, the issue must have been decided in a final judgment on the merits in the previous action. Third, the issue must have been competently, fully, and fairly litigated in the previous action. Fourth, the party against whom collateral estoppel is invoked in the current action must have been either a party or privy to a party in the previous action.[151]

All four elements must be present for collateral estoppel to apply.[152]

For the first element, the court must "determine whether the issues actually litigated in the first action are precisely the same as those raised in the present action."[153] The doctrine of issue preclusion "does not apply to issues that merely 'could have been tried' in the prior case, but operates only to issues which were actually asserted and tried in that case."[154] In order for Acuity's duty to defend to be extinguished by this exception to the eight corners rule, Acuity must show that the convictions decided *all* the material facts at issue in the claims for which it seeks to establish that it does not have a duty to defend. Otherwise, the impact of issue preclusion would be irrelevant to Acuity's duty to defend because the unaffected alleged facts would still support coverage.

Mr. Phillips' statement in support of his guilty plea to one count of burglary and nine counts of voyeurism provides:

---

[149] *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 34, 16 P.3d 1214, 1221 (quoting *Swainston v. Intermountain Health Care*, 766 P.2d 1059, 1061 (Utah 1988)).

[150] *Id.* at ¶ 37.

[151] *Id.* (quoting *Jones, Waldo, Holbrook & McDonough v. Dawson*, 923 P.2d 1366, 1370 (Utah 1996)).

[152] *Id.*

[153] *Schaer v. State By & Through Utah Dep't of Transp.*, 657 P.2d 1337, 1341 (Utah 1983) (quoting *Wilde v. Mid-Century Insurance Co., Utah*, 635 P.2d 417, 419 (1981)).

[154] *Id.* (quoting *International Resources v. Dunfield, Utah*, 599 P.2d 515, 517 (1979)).

> I stipulate and agree . . . that the following facts describe my conduct
> . . . .
>
> These facts provide a basis for the court to accept my guilty
> (or no contest) plea(s) and prove the elements of the crime(s) to
> which I am pleading guilty (or no contest):
>
> . . .
>
> The defendant in Salt Lake County from 5-28-2017 through 7-31-
> 21 entered a room occupied by AQ with the intent to commit
> Voyeurism in violation of 76-9-702.7
>
> The defendant in Salt Lake County from 5-28-2017 through 7-31-
> 21 intentionally used a camera to surreptitiously record M.G. for the
> purpose of viewing a portion of the individual's body which the
> person had a reasonable expectation of privacy without the person's
> consent and under circumstances the person had a reasonable
> expectation of privacy.[155]

From this factual basis, it is difficult to discern if any, much less all, of the allegations in the state court civil case were the *precise* issues "asserted and tried" in the criminal case. To begin, while Mr. Phillips explained that "M.G." in the guilty plea represents "Matt Gutierrez,"[156] no part of the factual basis—which refers to nine victims by their initials—involves Mr. Valadez-Lambert. This means that *none* of Mr. Valadez-Lambert's specific allegations against Mr. Phillips were the precise issues that the criminal case decided. In addition, the factual basis for the burglary conviction specifies a different victim—neither Mr. Valadez-Lambert nor Mr. Gutierrez. Accordingly, the conviction did not decide the precise issues alleged in the Amended Complaint. And because the convictions did not decide all of the factual issues in the Amended Complaint, the convictions do not preclude Mr. Phillips, Mr. Gutierrez, or Mr. Valadez-Lambert from arguing that Mr. Phillips' conduct was negligent or reckless rather than intentional, that Mr.

---

[155] Statement of Def. in Support of Plea(s), ECF No. 34-8 at 3–5.
[156] Phillips Dep. 145:9–145:12.

Phillips did not know "that the act would violate the rights of another," or that Mr. Phillips' conduct was not a criminal act.

This is sufficient to resolve the issue of whether Mr. Phillips' convictions relieve Acuity of any duty to defend. Even if the facts determined by Mr. Phillips' conviction for voyeurism are identical to some of the underlying action's alleged facts as to Mr. Gutierrez *and* assuming without deciding that the other three elements of issue preclusion are present, those facts do not comprise the entire factual basis of Mr. Valadez-Lambert and Mr. Gutierrez's Amended Complaint. Many of their claims rely on facts that do not have any possibility of having been determined by the convictions, including all of Mr. Valadez-Lambert's claims and those of Mr. Gutierrez's that do not rely on the voyeurism conviction's facts, such as Mr. Phillips evicting him without going through proper legal procedures, Mr. Phillips evicting him in retaliation for going to the police, or Mr. Phillips entering his bedroom when he was not present and going through his personal belongings. And for both plaintiffs in the underlying action, none of the facts asserted in their trespass claim are determined by Mr. Phillips' convictions. Therefore, even if the court were to find that Utah's Supreme Court would adopt this eight corners rule exception for extrinsic evidence, or if the court took judicial notice of Mr. Phillips' convictions, that would not eliminate Acuity's duty to defend because the convictions' factual basis does not remove all the claims from the policy's coverage.

### III.   Whether Acuity Has a Duty to Indemnify Mr. Phillips in the Underlying Action Is Not Yet Ripe Because Liability Has Not Been Determined.

"The duty to indemnify can only be determined after final adjudication of the merits of the allegedly insured claim."[157] This is because "[t]he duty to indemnify relates to liability

---

[157] *Aspen Specialty Ins. Co. v. Utah Loc. Governments Tr.*, 954 F. Supp. 2d 1311, 1316 (D. Utah 2013).

actually imposed on the insured for claims falling within the scope of coverage."[158] When the plaintiffs in the underlying action "have yet to establish [the insured's] liability for any claims, the question of [the insurer's] duty of indemnification is not ripe for adjudication."[159]

Here, Mr. Valadez-Lambert and Mr. Gutierrez have yet to establish Mr. Phillips' liability on any of the claims in the underlying actions. Therefore, the issue of Acuity's duty to indemnify is not ripe.

## ORDER

IT IS HEREBY ORDERED that Acuity's Motion for Summary Judgment is DENIED as to its duty to defend and DENIED for lack of ripeness as to its duty to indemnify.

Signed May 11, 2023.

BY THE COURT

_____

David Barlow
United States District Judge

---

[158] *Mount Vernon Fire Ins. Co. v. Okmulgee Inn Venture, LLC*, 451 F.App'x 745, 749 (10th Cir. 2011).
[159] *Id.* (citing *Culp v. Nw. Pac. Indem. Co.*, 365 F.2d 474, 478 (10th Cir. 1966)).